UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM H. SCHRAMM,** ) | **CASE NO. 3:04CV7782** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| **NORMAN Y. MINETA, Secretary,** ) | |
| **Department of Transportation,** ) | |
| ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #18) of the United States for Summary Judgment. For the following reasons, the motion is granted.

**I. FACTUAL BACKGROUND**

William H. Schramm ("Schramm"), formerly employed as an air traffic controller with the Federal Aviation Administration ("FAA"), brings this Title VII action pursuant to 42 U.S.C. § 2000e-3(a), against the Secretary of Transportation in his official capacity, alleging Schramm was subjected to post-employment retaliation. Specifically, Schramm claims the FAA's decision in December of 2003 denying him medical clearance to work as an Air Traffic Control Specialist for a private contractor was an adverse employment action causally connected to a previous Title VII retaliation claim he filed against the FAA on November 7, 2003, designated as Case No. 3:03CV7655.

In February of 2003, Schramm applied to be an air traffic controller for Midwest Air Traffic Controllers, a company which contracts with the FAA to handle air traffic at smaller

facilities.  On February 5, 2003, Schramm obtained the necessary Class II medical certification from the Flight Surgeon's Office of the FAA.  He then went to work as an air traffic controller at the airport in Jackson, Michigan.

In August of 2003, Schramm applied for, and obtained a position as a contract controller for the Department of Defense as part of Operation Enduring Freedom.  Because his deployment would last a year, Schramm underwent another examination and received a Class II medical certificate on August 25, 2003.  Schramm was deployed to Uzbekistan, and volunteered for duty in Kabul, Afghanistan.

On November 7, 2003, Schramm filed Case No. 3:03CV7655, alleging the FAA had retaliated against him in violation of Title VII of the Civil Rights Act of 1964, when a supervisor assaulted Schramm shortly after being served with a subpoena to appear at the trial of Schramm's first Title VII action.  Schramm served a copy of the Complaint and Summons on the Department of Transportation on or about December 1, 2003.

On December 30, 2003, Dr. Nestor B. Kowalsky ("Kowalsky") sent Schramm a letter, notifying him he was not qualified for the Class II airman's medical certificates issued to him on August 23, 2003 and February 5, 2003, due to his history "for taking Zoloft and for Anxiety Depressive Disorder."  (Plaintiff's Opposition Brief, ECF DKT #44, p. 9).  Schramm contends the decision of the Flight Surgeon finding him unqualified was in retaliation for initiating the Title VII lawsuit of November 7, 2003 against the FAA.

Only after Schramm underwent yet another medical examination in January of 2005, was he issued a Class II medical certificate by the FAA; and Midwest Air did not re-hire him until May of 2005.

-2-

Schramm alleges, as a direct result of the retaliatory conduct of the FAA, he was forced to terminate his position controlling traffic in Uzbekistan for the Department of Defense; he was forced to return to the United States; his employment with Midwest Air was terminated; he was forced to pay additional income taxes, penalties, and interest; and he was forced to incur additional traveling and living expenses he would not otherwise have had to incur.

Defendant United States submits summary judgment in its favor is appropriate with respect to the above-captioned Title VII retaliation claim.

## II. LAW AND ANALYSIS

**Standard of Review**

**Motion for Summary Judgment**

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005).

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Retaliation Under Title VII**

Title VII forbids an employer to discriminate against an employee because the employee has "opposed" a practice that Title VII prohibits, or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a).

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant took an adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F. 3d

784, 792 (6th Cir. 2000). The burden of establishing a *prima facie* case is not onerous; and, in fact, is a burden easily met. *Nguyen v. City of Cleveland*, 229 F. 3d 559, 563 (6th Cir. 2000). A *prima facie* case is defined as "sufficient evidence in the type of case to get plaintiff past a motion for directed verdict in a jury case or motion to dismiss in a nonjury case; it is the evidence necessary to require defendant to proceed with his case." *Black's Law Dictionary* 1190 (6th Ed. 1990). Once a plaintiff has established a *prima facie* case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris,* 201 F. 3d at 792-793 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant cannot establish a legitimate reason for its actions, the plaintiff prevails. *Ceckitti v. City of Columbus*, 14 Fed. Appx. 512, 516 (6th Cir.2001); see also *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 658 (6th Cir. 2000). If a legitimate reason is established, then the plaintiff must demonstrate, by a preponderance of the evidence, that defendant's proffered reason was pre-textual, i.e., that it "was not the true reason for the employment decision." *Morris*, 201 F. 3d at 793 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In the case at bar, Defendant does not dispute the first prong of Plaintiff's *prima facie* retaliation claim. It is unquestioned that Schramm engaged in activity protected by Title VII before and after the termination of his employment with the FAA. Moreover, for purposes of this summary judgment analysis, Defendant concedes the decision of the Flight Surgeon in December of 2003, finding Schramm was disqualified from holding a Class II airman's medical certificate, was an employment action adverse to Plaintiff.

It is significant, and undisputed, that Schramm was medically disqualified from holding a

Class II airman's medical certificate only fifty-three days after he filed a Title VII lawsuit against the FAA.  Temporal proximity between the protected activity and the retaliatory conduct, when combined with other factors, may be sufficient indirect evidence to create an inference of retaliatory motive.  *Singfield v. Akron Metro. Housing Auth.,* 389 F. 3d 555 (6th Cir. 2004);*Dicarlo v. Potter*, 358 F. 3d 408 (6th Cir. 2004); *Nguyen, supra*.  In view of the minimum burden of proof for a *prima facie* case, this Court will consider the causation prong of Schramm's retaliation case satisfied.

However, the Court must undertake a critical analysis of the remaining element of Plaintiff Schramm's proof, i.e., Defendant's knowledge of his protected activity.  Schramm points out his 2003 lawsuit was known at the regional level of the FAA.  The Office of the Regional Counsel was aware (Answers to Plaintiff's requests for Admissions, Interrogatories and Requests for Production of Documents, Exhibit #30) as were the Tower Manager and the Great Lakes Region's Resource Management Branch (Answers to Plaintiff's Interrogatories, Exhibit #36).

Plaintiff Schramm's medical examination summaries have a computer date stamp of "11/18/03" at the bottom, which Schramm presents as circumstantial evidence his files were accessed by the Flight Surgeon's Office eleven days after he filed his Title VII action.  According to Plaintiff, Joan Morgan, a program analyst for the FAA Flight Surgeon's Office, could not, or would not, identify at her deposition who directed her to access Plaintiff's files on 11/18/03.  Plaintiff presumes that direction would have come from the Air Traffic Division or Legal Counsel, or both.

Plaintiff also directs the Court's attention to notes, presumably written by Deputy Flight

-6-

Surgeon, Robert E. Liska, M.D., referencing an Alternative Dispute Resolution process in Plaintiff's initial lawsuit, which were improperly placed in Plaintiff's medical file, and "presented a negative view" of Schramm.

In Schramm's estimation, the correspondence of December 30, 2003, disqualifying him from controlling air traffic, has a "legal slant" and could not have been written solely by someone in the Flight Surgeon's Office.

On the other hand, Defendant denies knowledge of Schramm's protected activity prior to its December 30, 2003 determination of disqualification; Defendant contradicts Schramm's purported "plethora" of facts, and Defendant submits sworn supporting evidence. Dr. Kowalsky, who authored the December 30, 2003 notice of disqualification, avers he had no knowledge of Plaintiff's prior Title VII complaints until sometime after March 19, 2004. (Kowalsky Affidavit at p.1). Joan Morgan avers she learned about Plaintiff's "EEO complaint in about April 2004, when the EEO investigator came to talk to the Regional Flight Surgeon," and denies any "knowledge of any other EEO complaints or activity by him." At her deposition, Morgan acknowledged the date stamp of 11/18/03 on Plaintiff's medical file, but denied knowing what it means. (Morgan Depo. at 84). She also specifically denied anyone from Air Traffic or Legal requested her to access Plaintiff's files. (Morgan Depo. at 86). The medical disqualification issue was not discussed with anyone outside the Flight Surgeon's Office. (Morgan Depo. at 101). The disqualification correspondence was prepared by Morgan for Kowalsky's signature and was drafted using a master form letter. (Morgan Depo. at 101-104). The decision to disqualify Schramm from controlling air traffic was a medical decision, made without reference to prior EEO/ Title VII complaints or litigation. When asked about the influence of Schramm's

-7-

prior litigation history on the disqualification decision, Morgan responded: "None, not accessed, not reviewed, not a consideration." (Morgan Depo. at 104).

In sum, Defendant counters each item of Plaintiff Schramm's circumstantial proof on the element of knowledge with sworn testimony in affidavit or deposition form. This Court acknowledges that Plaintiff's burden in his *prima facie* retaliation case is not onerous. However, Schramm has not provided any evidence from which reasonable inferences can be drawn by a fact-finder; rather, Schramm provides only speculation of what was known or contemplated by the Flight Surgeon's Office of the FAA when the disqualification letter of December 30, 2003 was issued.

### III. CONCLUSION

For the foregoing reasons, this Court finds Plaintiff has not satisfied his burden of establishing Defendant's knowledge of his protected activity by evidence of any sort, direct or circumstantial, sufficient to create a reasonable inference of a retaliatory motive. Plaintiff, William H. Schramm, has failed to demonstrate a *prima facie* case of retaliation under Title VII; and therefore, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

**DATE: March 25, 2008**

                                          **s/Christopher A. Boyko**
                                          **CHRISTOPHER A. BOYKO**
                                          **United States District Judge**

March 25, 2008